IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| JESSE NARCISSE, | ) | 8:19CV18 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| LAURAN KUBES, RHONDA WILSON, DON WHITTMORE, DREW ENGLISH, SPENCE PROPEL, JULIE REDWING, JOHN REYOLDS, KRIS BOE SIMMONS, KATHY HERIAN, and NORFOLK REGIONAL CENTER, | ) | |
| Defendants. | ) | |

Plaintiff, Jesse Narcisse, filed this case on January 16, 2019, and has been granted leave to proceed in forma pauperis. The court now conducts an initial review of Plaintiff's Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff is an inpatient at the Norfolk Regional Center ("NRC"). For purposes of this initial review, the court will assume Plaintiff was involuntarily committed.

Plaintiff alleges that on November 12, 2018, he was placed on "unit restriction" for 48 hours by Defendant Rhonda Wilson, RN, after a third-shift staff member, Defendant Lauran Kubes, reported that she saw Plaintiff crawling between stalls in a public bathroom on the preceding day. Plaintiff denies this report, and also claims the unit restriction should have been limited to 24 hours. Plaintiff feels he was placed on a 48-hour restriction because of his race and sexual orientation. (Filing 1, pp. 4, 8) Plaintiff filed a "step 1" grievance with Defendant Julie Redwing, RN (NRC director of nursing), who responded on November 19, 2018, that the matter was being investigated. (Filing 1, pp. 10-11)

Plaintiff alleges that on November 13, 2018, Defendant Don Whittmore (NRC head of compliance) and Defendant Drew English (NRC compliance specialist) both told him that a video camera had captured him crawling under the toilet stall. Plaintiff alleges Whittmore became very irate because Plaintiff would not say who had told him about a camera being pointed at the bathroom. (Filing 1, p. 8) Plaintiff alleges that on November 20, 2018, he wrote to Defendant Spence Propel (Nebraska Department of Health and Human Services ("DHHS") employee) concerning the incident, and that Propel later came to Plaintiff to ask who had told him that a video camera was pointed at the bathroom; Propel allegedly was upset that someone had told Plaintiff about the camera. (Filing 1, p. 8)

Plaintiff alleges that Defendant John Reyolds is in charge of all regional centers for the State of Nebraska and, as such, is responsible for the video camera. Plaintiff also alleges that Defendant Kris Boe Simmons (NRC director) and Defendant Kathy Herian, RNBC (NRC unit supervisor on 3 East where the incident occurred) both knew or should have known that a video camera pointed at the bathroom violated Plaintiff's right to privacy. (Filing 1, p. 9)

Plaintiff filed a second "step 1" grievance on December 2, 2018, complaining that he had not been told the outcome of the investigation into the matters raised in the first grievance, that no one had addressed the issue of the camera pointed at the bathroom, and that he had not been shown the video evidence. Defendant also requested a "step 2" grievance form. Defendant Redwing responded to this grievance on December 11, 2018, stating that a "step 2" grievance form was given to Plaintiff, and she responded again on December 17, 2018, stating that the result of the investigation was discussed with Plaintiff on December 14, 2018. (Filing 1, p. 12).

Plaintiff filed a "step 2" grievance on December 13, 2018. Defendant Simmons responded on December 20, 2018, that:

> At the time of initial grievance NRC was investigating the situation. That has been completed and findings have been reviewed with you twice I believe. Video evidence indicates you and a peer were in same stall in bathroom. To address additional concerns: the camera is not aimed into the bathroom, although peripheral can see. All stalls have doors for privacy. No findings that

staff tested you. Manual indicates patients are not to be in rooms together nor shall they be in same stall in bathroom. Manual clearly states UR is a <u>minimum</u> of 24 [hours]. Team determines length.

(Filing 1, p. 14)

The foregoing Defendants are sued in their individual and official capacities. The Norfolk Regional Center is also named as a Defendant. Plaintiff claims Defendants have violated his rights under the Fourth Amendment, and he seeks to recover compensatory and punitive damages. (Filing 1, p. 4)

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

III. DISCUSSION

Liberally construed, Plaintiff's Complaint asserts one or more claims for relief under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

*A. Eleventh Amendment Immunity*

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Here, Plaintiff sues NRC, which is a state instrumentality,[1] and nine state employees. The Eleventh Amendment does not bar damages claims against state officials acting in their personal capacities, nor does it bar official-capacity claims for prospective injunctive relief. Because Plaintiff in this case is seeking only to recover damages, this action cannot proceed against NRC or against the nine state employees sued in their official capacities. It must next be determined whether Plaintiff's Complaint states a plausible § 1983 claim for which any of the state employees may be held personally liable.

*B. Invasion of Privacy*

"The Eighth Circuit has recognized that '[a]lthough an involuntary committed person at a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner.'" *Beaulieu v. Ludeman*, No. CV 07-1535 (DWF/JSM), 2011 WL 13187190, at *14 (D. Minn. Feb. 15, 2011) (quoting *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004)), *report and recommendation adopted*, No. CV 07-1535 (DWF/JSM), 2011 WL 13187191 (D. Minn. Mar. 31, 2011), *aff'd*, 690 F.3d 1017 (8th Cir. 2012).

---

[1] NRC is operated by the Nebraska Department of Health and Human Services.

> "While the circumstances of institutional life demand that privacy be limited, it is clearly established that gratuitous invasions of privacy violate the Fourteenth Amendment." *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007) (*vacated on other grounds by Hunter v. Hydrick*, —— U.S. ——, 129 S.Ct. 2431, 174 L.Ed.2d 226 (2009); *see also Sanders v. Kingston*, 53 Fed. Appx. 781, 784 (7th Cir. 2002) (upholding the dismissal of a privacy claim on a motion to dismiss "[b]ecause the need to watch prisoners closely is a legitimate institutional concern, a prisoner is entitled to little if any privacy, even when using the bathroom or taking a shower."); *Spencer v. Bender*, Civil Action No. 08-11528-RGS, 2010 WL 1740957 at *3 (D. Mass. April 28, 2010) (dismissing a privacy claim on a motion to dismiss finding that an "[a]n inmate's lack of privacy while using the toilet or shower also does not violate the Eighth or Fourth amendments.").

*Id.* (recommending dismissal § 1983 claim brought by involuntarily committed patients after finding that shower doors which covered the torso were not a gratuitous invasion of privacy or a due process violation); *see also Arnzen v. Palmer*, No. 12-CV-4001-DEO, 2012 WL 7984914, at *2 (N.D. Iowa Sept. 28, 2012) (on motion for preliminary injunction filed by involuntarily committed patients challenging the placement of video cameras in restrooms, district court denied the motion as to cameras in "dormitory style restrooms" (restrooms with multiple toilets, showers and sinks) but ordered that cameras in "traditional style bathrooms" (bathrooms with a single toilet, sink, and shower) be pointed at the ceiling or covered with a lens cap), *aff'd*, 713 F.3d 369 (8th Cir. 2013).

Here, a staff member allegedly observed Plaintiff crawling between toilet stalls in a public bathroom. There is no allegation that the video camera was hidden or was positioned in a manner that provided an unobstructed view into the toilet stalls. The court is not aware of any authority which would indicate there was a constitutional violation in this situation. Indeed, the Eighth Circuit has held that even in a non-custodial setting, "[a] bathroom stall, such as at issue here,

> does not afford complete privacy, but an occupant of the stall would reasonably expect to enjoy such privacy as the design of the stall afforded, i.e., to the extent that defendant's activities were performed beneath a partition and could be viewed by one using the common area of the restroom, the defendant had no subjective expectation of privacy, and, even if he did, it would not be an expectation which society would recognize as reasonable.

*United States v. White*, 890 F.2d 1012, 1015 (8th Cir. 1989) (quoting *People v. Kalchik*, 407 N.W.2d 627, 631 (Mich. App. 1987), and holding that observations made by police officer who followed defendant into airport restroom were not an illegal search because they were not a violation of any reasonable expectations of privacy); *see also United States v. Billings*, 858 F.2d 617 (10th Cir. 1988) (defendant had no reasonable expectation of privacy in open area of stall where any patron of public restroom could easily see, and thus officer's observation of drugs taped to defendant's legs, which were plainly visible in gap between restroom stall and floor, did not taint subsequent search).

*C. Disciplinary Action*

Plaintiff also complains that he was wrongfully placed on a 48-hour unit restriction. Again, the court is not aware of any authority which would hold that a disciplinary action such as this can provide the basis for a plausible § 1983 claim. "The Constitution does not prohibit punishing a civilly committed person for violating the rules of the committing institution. And ... the same concerns that prevent courts from second-guessing disciplinary decisions regarding incarcerated persons—security of the staff and residents of the institution, first and foremost—also apply in the civil-commitment area." *Larson v. Jesson*, No. CV 11-2247 (PAM/LIB), 2018 WL 3352926, at *2 (D. Minn. July 9, 2018). Also, a 48-hour unit restriction is "a *de minimis* level of imposition with which the Constitution is not concerned." *Bell v. Wolfish*, 441 U.S. 520, 539 n.7 (1979) (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)); *see, e.g., Mendez v. FMC Minnesota*, No. CV 16-845 (ADM/BRT), 2017 WL 2312889, at *5 (D. Minn. Mar. 10, 2017) (6-day placement of civilly committed patient in segregated housing for failure to provide urine sample did not implicate liberty interest protected by due process), *report and recommendation adopted*, No. CV 16-845 ADM/BRT, 2017 WL 2312870 (D. Minn. May 26, 2017), *aff'd*, 728 F. App'x 607 (8th Cir. 2018).

Plaintiff believes he was unfairly disciplined because of his race or sexual orientation, but there are no facts are alleged in the Complaint to support such a claim. To state an equal protection claim, the Complaint must contain factually supported allegations that Plaintiff was treated differently from others who were similarly situated and that Defendants acted against him with a discriminatory purpose. *See Johnson v. City of Minneapolis*, 152 F.3d

859, 862 (8th Cir. 1998); *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013). Because vicarious liability is inapplicable to § 1983 suits, Plaintiff must also plead that each Defendant, through his or her own individual actions, has violated the Constitution. *See Iqbal*, 556 U.S. at 676.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted, and is therefore subject to dismissal under 28 U.S.C. § 1915(e)(2). Out of an abundance of caution, however, the court will grant Plaintiff leave to file an Amended Complaint. If an Amended Complaint is filed within 30 days, the court will then conduct another initial review pursuant to 28 U.S.C. § 1915(e)(2). But if an Amended Complaint is not filed within 30 days, this action may be dismissed without further notice to Plaintiff.

IT IS THEREFORE ORDERED:

1. On the court's own motion, Plaintiff shall have 30 days in which to file an Amended Complaint that states a claim upon which relief may be granted. Failure to file an Amended Complaint within 30 days will result in the court dismissing the case without further notice to Plaintiff.

2. The clerk of the court is directed to set the following pro se case management deadline in each case: March 4, 2019: check for amended complaint.

DATED this 1st day of February, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge